Michael Martinek et al., Appellees, v. George L. Zarovy et al., Defendants.
Appeal of George L. Zarovy and Association of Chicago Rovnans, Appellants.

Gen. No. 42,364.

Opinion filed May 5, 1943.

ADAM POLIAK and CHARLES H. PEASE, both of Chicago, for appellants.

ALOIS MAVRIC, of Chicago, for appellees.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

On February 14, 1920 a group of Chicagoans of Slovakian origin, formerly residents of Rovne, a village in Czechoslovakia, formed a voluntary association under the name of "Sjednotenie Americky Rovnanov," meaning in English "Association of American Rovnans." On March 15, 1924 the name was changed to "Sjednotenie Chicagskych Rovnanov," meaning in English, "Association of Chicago Rovnans." Up to April 6, 1925 the association accumulated $928.50, which was deposited in the Kaspar American State Bank of Chicago in the name of "Sjednotenie Chicagskych Rovnanov." John Canik, Paul Razdik and George Hassil signed the deposit card at the bank and all withdrawals were to be made in the name of the association pursuant to their signatures. At a meeting held on March 30, 1930, the following officers were elected: George L. Spolec, president, Joseph Duris,

vice president, Joseph Kozlik, secretary, George L.
Zarovy, treasurer, and John Canik, Paul E. Razdik
and Joseph Halas, trustees. The minutes of this meet-
ing show the following: "Moved that it is necessary
to take out a charter. Decided to wait with the char-
ter. Zarovy explained that before membership cards
be had, charter should be obtained, and before every-
thing, by-laws. Committee appointed to work on by-
laws." At the annual meeting held on December 18,
1931, Spolec did not seek re-election. The following
officers were elected: Joseph Duris, president, Louis
Kozlik, vice president, Adam Dzudzi, secretary, John
Canik, treasurer, and Paul Komada, Joseph Krizin
and Paul Pavlik, trustees. It will be observed that
Joseph Duris moved from vice president to president;
Louis Kozlik from secretary to vice president; Adam
Dzudzi became secretary in place of Kozlik; John
Canik became treasurer in place of George L. Zarovy;
and Paul Komada, Joseph Krizin and Paul Pavlik
became trustees in place of John Canik, Paul Razdik
and Joseph Halas. At a meeting held on January 31,
1932, Joseph Duris presiding, the minutes show:
"Three new members were appointed on committee for
by-laws. About charter, Michyeta will see Perina,
politician." The minutes of the meeting held on Feb-
ruary 28, 1932 show: "By-laws read and approved
and given to secretary to rewrite and be translated
into English. Decided that matter of transferring
money in bank to checking account be left over to
next meeting because not well attended and both
treasurers, old and new, were not present." The min-
utes of the meeting held on April 24, 1932 read: "By-
laws read and adopted and moved they be translated
by Pavela, and that he should get at least $5.00.
Moved and carried that old trustees should go to Zar-
ovy to get the bank book." The minutes of the meet-
ing held on June 25, 1932 read: "Joseph Duris
presiding. . . . George Zarovy reported our meet-

ings are not regular because we have no charter, and that he has a charter. He hopes that we will get the money from the bank, but he stated we must submit a certificate for that purpose." No further meetings of the unincorporated association were held during a period of more than six years. The minutes of the next meeting, held on August 13, 1938 read: "Called to order by M. Martinek. Officers were elected, M. Martinek, president, Louis Mihalik, vice president, and Louis Duris, Joseph Svabek and Louis Kozlik, trustees. Meeting was attended by persons named Adam Dzudzi, secretary, Andrew Michyeta, treasurer, [Here are listed names of 21 persons]. There were numerous minutes from the past, only that we know where we discontinued. Then we pondered the by-laws, about which Louis Duris stated that he composed in Slovak only, and that they should have been submitted for translation into English by M. Pavela for $5.00, but he requested $25.00. For that reason they were taken back, M. Martinek suggested that he is in some other clubs from which he can obtain by-laws, and with some changes will complete ours. This matter was unanimously accepted. There was some discussion about a charter, and it was mentioned on this that Zarovy was working with the assistance of Mr. Skarda. It was unanimously agreed that this matter be completed by the officers, that is, the president and trustees. Motion accepted that we give Brother Zarovy thanks in our minutes for his tireless work in the past, and as a great pioneer of this Club; and that we are to make this known to him through official channels."

On June 24, 1932 the Kaspar American State Bank of Chicago was closed by the auditor of public accounts and a receiver appointed. It will be observed that the day after the bank closed a meeting of the association was held and that the succeeding meeting was not held until August 13, 1938. At the time the

bank closed the voluntary association had on deposit $1,132.28. The bank was reopened on January 15, 1935, under an arrangement whereby the association, in common with other depositors, was given credit for 40 per cent of the amount on deposit and a certificate of beneficial interest as to the remaining 60 per cent of the deposit. Accordingly, at the time the bank reopened the association was given credit for the sum of $520.85 and a certificate of beneficial interest for $611.43. On January 1, 1941, the association had to its credit in the bank $571.02, as the result of an accumulation of interest. Apparently, the sole assets of the association are the bank account and the certificate of beneficial interest. The certificate of beneficial interest is in favor of ''Sjednotenie Chicagskych Rovnanov,'' or ''Association of Chicago Rovnans.'' The certificate entitles the association to share pro rata in any future recoveries and net profits of the bank. A written acceptance on the face of the certificate dated November 10, 1934 is signed by the Association of Chicago Rovnans, by John Canik and Paul Razdik, trustees. On May 21, 1932 a notary public certified that George Spolec, Michael Martinek, George L. Zarovy, Paul Razdik, Joseph Korabik, Louis Duris and Joseph Krizin appeared before him and acknowledged that they executed an application to the Secretary of State to secure a charter as a corporation not for profit for ''Association of Chicago Rovnans.'' This application was forwarded to the Secretary of State, who, on May 31, 1932, issued his certificate that the ''Association of Chicago Rovnans is a legally organized corporation under the laws of this State.'' The certificate of incorporation was recorded in the recorder's office of Cook county on August 18, 1932. The seven persons who appeared before the notary public were named as the first board of directors. This is the charter Mr. Zarovy spoke about when he stated at the meeting of the unincorpo-

rated association held on June 25, 1932 that the meetings were not regular because the association had no charter and he (Zarovy) had a charter. On May 21, 1937, as a result of an action instituted by the Attorney General of the State of Illinois, a decree was entered in the superior court of Cook county dissolving the corporation known as the "Association of Chicago Rovnans." This decree was entered because of the failure of the corporation to file reports and to pay filing fees. On January 24, 1939, by agreement between the corporation and the Attorney General, the superior court of Cook county entered an order vacating the decree of dissolution and dismissing the information filed by the Attorney General. Thereupon, the corporation was restored to good standing on the records of the Secretary of State.

On October 8, 1938 a notary public certified that Michael Martinek, Louis Mihalik, Andrew Michyeta, Adam Dzudzi, Louis Duris, Joseph Svabek and Louis Kozlik acknowledged that they made application to the Secretary of State for a charter as a corporation not for profit under the name of "Club Rovnan." The certificate names Martinek as president, Mihalik vice president, Michyeta treasurer, Dzudzi secretary, and Duris, Svabek and Kozlik as trustees. On October 11, 1938 the Secretary of State issued a certificate that "Club Rovnan is a legally organized corporation under the laws of this State." The certificate of incorporation was recorded in the recorder's office of Cook county on October 19, 1938. On October 15, 1938 there was a meeting of the members of Club Rovnan. The minutes read: "Michael Martinek presiding. Andrew Michyeta gave report on the charter, which was accepted. He reported that the State Department advised him we should have by-laws and seal. Discussion about the old treasury." The minutes of the meeting of Club Rovnan held on December 17, 1938 read: "Unanimously decided that past treasurer

Zarovy be sent a registered letter for the coming meeting, at which he should give his account as to the treasury, where it is." At a meeting of Club Rovnan held September 7, 1940 it was stated that the deposit book and certificate of beneficial interest were not in the possession of the Club and Martinek, Duris and Kulisek were authorized to use any necessary means of obtaining the funds from the bank. The minute book of Association of Chicago Rovnans, a corporation, shows a meeting of the directors held on December 10, 1938. The president, Spolec, reported that the corporation had been dissolved and it was voted that application be made to have the dissolution vacated. The directors elected George Spolec president, Adam Dzudzi secretary, George Zarovy treasurer, and Paul Razdik, Joseph Halas, Paul Komada and Joseph Krizin as additional directors. At a meeting of Association of Chicago Rovnans, a corporation, on January 27, 1939 the minutes recited that George L. Spolec, president, presided, and that "16 officers, founders, directors and members were present. Treasurer George Zarovy reports that a number of our former members, instead of calling a regular meeting of the Association of Chicago Rovnans, called for themselves another meeting under a different name, and also founded some other Rovnan Association, and also that they possibly have for themselves a charter; on this, though, they request our treasury. Inasmuch as our Association is a properly chartered corporation, and the officers are subject under the Illinois corporation laws, it was agreed that our Association should further exist as it has existed. Adam Dzudzi explained how it was brought about that he brought our minute book to a meeting at which was founded a certain Rovnan Club; that he did not think there was going to be founded another association or club. Treasurer Zarovy showed the deposit book, on which there is shown a deposit, and also the stamping of the

book, due to the reopening of the bank. Motion carried that the officers should be comprised of the following: George L. Spolec president, John Horvat vice president, George L. Zarovy treasurer and Adam Dzudzi secretary.'' The minutes of a meeting of the corporation known as Association of Chicago Rovnans held on November 9, 1940 show that a report was made in which that corporation claimed to be entitled to the credits with the bank. The minutes of this meeting also contain the following: ''Motion made and unanimously accepted that the members who were, perhaps, founders of this body, and are against our Association, have automatically expelled themselves.'' The minutes of a meeting of the Association of Chicago Rovnans, a corporation, held on January 30, 1941 read: ''Treasurer Zarovy explained in regard to the suit instituted against him and the bank where our money is deposited. . . . Upon this a motion was unanimously accepted that Attorney Poliak should also represent our corporation in said suit.''

On February 14, 1941 an amended complaint was filed in the superior court of Cook county by Michael Martinek and Joseph Duris ''on behalf of themselves and all others, approximately 75 members of Association of Chicago Rovnans, an unincorporated association'' and Club Rovnan, a corporation, against George L. Zarovy, Association of Chicago Rovnans, a corporation, and Kaspar American State Bank of Chicago. Plaintiffs prayed for a decree against Zarovy to deliver to them the pass book, and that the bank be ordered to turn over the money credited to the unincorporated association to plaintiffs, or that judgment be entered against the bank and that Zarovy be decreed to pay to plaintiffs their attorney's fees and costs. An answer was filed by Zarovy and the Association of Chicago Rovnans, a corporation. The case was referred to a master in chancery. The master found there were approximately 75 members of the

association in 1932, and that at the time of the incorporation of Club Rovnan, the membership incorporated into that club constituted all of said members, except a few of the self-constituted directors of the corporation known as the Association of Chicago Rovnans. The master recommended that a decree be entered directing the bank to pay to Club Rovnan the amount on credit under the name of Sjednotenie Chicagskych Rovnanov, or Association of Chicago Rovnans, with all interest and increase, less $50 as fees for the bank's attorney, and ordering Zarovy to make an accounting as former treasurer for all moneys of the membership of the Association of Chicago Rovnans, and directing the defendants to deliver to the officers of Club Rovnan the bank book, certificate of deposit and all papers in their possession pertaining to the money. Objections to the master's report were overruled and permitted to stand as exceptions. The exceptions were overruled and a decree entered as recommended by the master. The costs, including the master's fees, were fixed at $703.60, less $300 paid on account, or $403.60, plus witness fees of $9.60, or a total of $413.20, and were taxed against Zarovy. Zarovy and the Association of Chicago Rovnans, a corporation, appeal from the decree.

Defendants assert that the meeting of the voluntary association held on August 13, 1938 was not binding upon them and was void because (a) notice was given to only a part of the members; (b) no notice was given of the nature of the business to be transacted at the meeting; and (c) only a minority of the members of the association was present at the meeting. They also maintain that no action was taken at the meeting of August 13, 1938, changing the name of the voluntary association to "Club Rovnan"; that an Illinois corporation can change its name only by the method prescribed by the statute; that there was no assignment or transfer to Club Rovnan of the funds in the bank;

that the purposes of Club Rovnan, as set forth in the certificate of incorporation, are different from the purposes of the voluntary association; that by vacating the decree of dissolution, the corporation known as the Association of Chicago Rovnans was restored to all its rights, duties and property the same as if the decree had never been entered; and that the taxing of all the costs against Zarovy was inequitable. Plaintiffs, answering these points, insist that Club Rovnan was a successor to the unincorporated association; that the meeting of the members of the unincorporated association held on August 13, 1938, was a valid meeting, binding on all members, including defendants; that the notice given for that meeting was sufficient; that there was a majority of members, except Mr. Zarovy, at that meeting; that the Association of Chicago Rovnans, up to the meeting of June 25, 1932 and at the time of the succeeding meeting on August 13, 1938, was an unincorporated association; that at the meeting of August 13, 1938 the members reassembled, officers were elected, the name was changed and shortened, Zarovy was called upon to deliver up the bank book and make an accounting and a committee was elected to procure a charter; that a charter was procured for Club Rovnan, a corporation, and accepted by the members of the unincorporated association; that the members of Club Rovnan, a corporation, are the same persons as those who are members of the old association; that there was a continuity in every respect, even to the use of the old minute book; that the Association of Chicago Rovnans was not a corporation at the time of the incorporation of Club Rovnan; that Club Rovnan, having become the successor to the original Association of Chicago Rovnans, and as such assuming its liabilities, also became the lawful owner of its assets; that the purposes of Club Rovnan are the same as those of the unincorporated association; that vacation

of the decree of dissolution of the Association of Chicago Rovnans, a corporation, restored to it no rights, duties and property that it did not possess before its dissolution; and that the judgment against Zarovy for the entire costs is just and equitable because he inspired and caused all of the misdoings of the defendant, Association of Chicago Rovnans, a corporation.

The association was organized in 1920. In 1924 the name was changed to Association of Chicago Rovnans. At the meeting of March 30, 1930 someone moved that "it is necessary to take out a charter." However, it was decided to "wait with the charter." Mr. Zarovy, then the treasurer, explained that "before membership cards be had, a charter should be obtained, and before anything, by-laws." A committee was appointed to work on by-laws. At the meeting held December 18, 1931 John Canik was elected treasurer in place of George Zarovy. The minutes of the meeting of January 31, 1932 show that three new members were appointed "on committee for by-laws. About charter, Michyeta will see Perina, politician." At the meeting of January 28, 1932 the by-laws were read and approved and given to the secretary for the purpose of translating them into English. There was a discussion as to transferring the bank account from a savings account to a checking account and it was decided to allow the matter to go over to the next meeting. On April 24, 1932 the by-laws were "read and adopted." It was "moved and carried that the old trustees should go to Zarovy to get the bank book." The minutes of the meeting of June 25, 1932 recite that Joseph Duris reported that he stopped the printing of the by-laws and that "Zarovy stated that our meetings are irregular because we have no charter and he has one, and that he hopes we will get the money from the bank." The bank was closed on June 24, 1932. Due to this fact and also because many members were out of work on account of the general de-

pression which then prevailed, the unincorporated association became inactive. No meeting was called or held until August 13, 1938, a period of more than six years. In the meantime, the members were inquiring as to the status of the bank account. On May 31, 1932, a charter was issued in the name of Association of Chicago Rovnans. It was not recorded until August 18, 1932. When Mr. Zarovy stated at the meeting of the unincorporated association that the meetings were irregular because "we have no charter" and that he had one, he was referring to the charter issued May 31, 1932. Defendants maintain that the corporation known as Association of Chicago Rovnans succeeded to the rights of the unincorporated association and that it became entitled to the account in the bank. The minute book of the Association of Chicago Rovnans, a corporation, states that the charter was issued on May 31, 1932. However, the first meeting, of which there is any record, was held on December 10, 1938. At that meeting it was voted that George Spolec, president, and George Zarovy, treasurer, be appointed to take steps to vacate the decree of dissolution. At a meeting of the Association of Chicago Rovnans, a corporation, held on January 27, 1939, at which 16 officers, founders, directors and members were present, Mr. Zarovy called attention to the formation of Club Rovnan by some of "our former members." Adam Dzudzi, secretary of Association of Chicago Rovnans, explained, according to the minutes of the meeting of January 27, 1939, "How it was brought about that he brought our minute book to the meeting at which was founded a certain Rovnan Club; that he did not think there was going to be founded another association or club."

The unincorporated association founded in 1920, the name of which was changed to Association of Chicago Rovnans in 1924, was entitled to the funds on deposit in the bank. It is manifest that the granting of a cer-

tificate of incorporation on May 3, 1932 to some of the members did not constitute a transfer or assignment of the funds in the bank or any other assets of the unincorporated association to the corporation. The fact that a charter was procured for a corporation of the same name as the unincorporated association, did not transfer the members from the unincorporated association to the corporation. This could only be done by the voluntary action of the members of the unincorporated association. The members of the unincorporated association could by express action or by implication from their conduct become members of the corporation of the same name, and in that way the corporation could become the successor of the unincorporated association and acquire its rights and assets. There is a conflict in the testimony as to the number of members in the unincorporated association. One witness who was acquainted with the facts testified that the unincorporated association had 75 members. This allegation is also made in the amended complaint. At the time of the trial defendants claimed there had been 120 members, and that 26 died, leaving 94 members. Mr. Zarovy was replaced as treasurer at the December 1931 meeting. He had possession of the bank deposit book, and was instrumental in procuring the charter in the name of the Association of Chicago Rovnans. He was then elected treasurer of that corporation. Apparently, he and the group with which he was associated believed that by procuring a charter with the same name as the unincorporated association, the corporation would succeed to all the rights of the unincorporated association. We find that the record does not show that the members of the unincorporated association assigned or transferred the bank account or any other assets to the corporation. In fact, the record shows that the unincorporated association appointed a committee consisting of former trustees to endeavor to procure the bank

deposit book from Mr. Zarovy. The unincorporated association was not dissolved in 1932. It continued to exist as an unincorporated association. However, due to the depression and the closing of the bank, the unincorporated association became inactive. The corporation known as the Association of Chicago Rovnans did not become the successor of the unincorporated association and did not acquire any right to its assets. It was dissolved by a decree of the superior court on May 21, 1937. The decree was vacated on January 24, 1939 and this corporation was restored on the records of the Secretary of State. This was done with the consent of the Attorney General. The plaintiffs cannot challenge the action of the Attorney General or the superior court in thus restoring the corporation. However, the dissolution and restoration of the corporation does not affect the rights of the plaintiffs as the corporation did not acquire any greater rights as against plaintiffs after restoration than it possessed before it was dissolved.

We turn to a consideration of the situation that arose following the meeting of August 13, 1938 and the issuance of a certificate of incorporation to Club Rovnan. It will be recalled that Adam Dzudzi was elected secretary of the unincorporated association in December 1931. The last meeting was held on June 25, 1932. Plaintiffs state that the meeting of August 13, 1938 should be considered a "reassemblage meeting." The notice sent out by the secretary merely informed the members that they were requested to come to a meeting which would be held at a certain time, and concluded "be sure to come for we have important proceeding." This was a special meeting. Certainly no intimation was given in the notice that any move would be made to have the unincorporated association dissolved and to have the members and assets of that association absorbed by a new corporation to be called Club Rovnan. Where a special meeting is called by

an association for the transaction of business of an unusual nature, reasonable notice of the time, place and object of the meeting must be given, unless the members attend and make no objection, or unless they waive notice. We are satisfied that the notice sent out by Mr. Dzudzi, announcing the meeting of August 13, 1938, was insufficient. When Mr. Dzudzi first appeared as a witness for plaintiffs, he testified: ''I mailed postal cards for the August, 1938 meeting to the members of the association. I do not know whether I mailed them to Mr. Zarovy and all the members. Maybe I mailed them and maybe not. I mailed the postal cards to all the members of the association for that meeting.'' On cross-examination Mr. Dzudzi testified: ''The meeting of August 13, 1938 was a special meeting. I don't know for what purpose it was called. Martinek asked me to call a meeting. . . . Association of Chicago Rovnans had about 65 members in 1938 and about 75 in 1932. For the August 13 meeting I sent notices to about 45 members. I didn't send it to the rest of them, because I didn't have the addresses. I don't know if I mailed a notice of this meeting to Paul Kovada, Paul Razdik, Joseph Krizin and Paul Spolec.'' It will be observed that he did not state that the addresses of those not notified were unknown or could not be ascertained. Whether in August 1938, the unincorporated association had 65, 75 or 94 members, it is clear that notices were sent to only 45 members, and that of these only 21 or 22 were present. A charter for Club Rovnan was issued on October 11, 1938. At the meeting of Club Rovnan on October 15, 1938 ''it was reported that the charter was with the treasurer.'' The minutes of the meeting of Club Rovnan held December 17, 1938 read: ''Agreed that Zarovy be sent a registered letter to attend the next meeting at which he is to give his report on the old treasury, where it is.'' On October 19, 1940, 42 members of the unincorporated association executed

a power of attorney to Michael Martinek and others authorizing them to proceed to collect the money deposited with the bank, and to acquire the deposit book and any other property belonging to the unincorporated association, and for an accounting. On July 22, 1941 three of these 42 members executed revocations of the power of attorney theretofore executed. We find that in addition to the notice being insufficient, it was sent to only 45 members. At that time there were 65, 75 or 94 members in the association. Only 21 or 22 members attended the meeting. It is manifest that these members of the unincorporated association could not transfer the assets of that association to the new corporation known as Club Rovnan. Nor could the Club Rovnan obtain the members of the unincorporated association as its members without their consent. The parties procuring the charters apparently believed that the charters conferred authority on them to control the activities and assets of the unincorporated association regardless of the wishes of the members of that association. Perhaps, they were thinking of the historic Charter Oak in the hollow of which the charter of Connecticut was sealed for two years to prevent it from falling into the hands of an emissary of King James II. Each of these groups feels that because it has a charter, it has the right to the funds of the unincorporated association. It will be noted that the minutes of the directors' meeting of the Association of Chicago Rovnans held on November 9, 1940 state: "Motion made and unanimously accepted that the members who were, perhaps, founders of this body, and are against our association, have automatically expelled themselves." Thus, after having, to their own satisfaction as they thought, taken over the membership and assets of the unincorporated association, the directors of the Association of Chicago Rovnans decided that the members of the unincorporated association who were opposing them, were expelled

from the Association of Chicago Rovnans, a corporation. It is obvious that the rights of two or perhaps three groups are involved. The members of the unincorporated association who joined the Association of Chicago Rovnans, a corporation, seek the assets and prestige of the unincorporated association and the members of the Club Rovnan are endeavoring to do the same. The record is not clear, but it is likely that there are some members of the unincorporated association who have not affiliated with either Club Rovnan or the Association of Chicago Rovnans, a corporation. The record does not show whether the group known as the Association of Chicago Rovnans has ever been dissolved. It is patent that if all of the members of the unincorporated association were members of each corporation, there would be no dispute. The dispute apparently arose from the fact that some of the members affiliated themselves with the Association of Chicago Rovnans and some with Club Rovnan. In our opinion the credit in the Kaspar American State Bank of Chicago in the name of the Association of Chicago Rovnans, an unincorporated association, belongs to the members of that association who were such members at the time of the meeting on June 25, 1932. No assignment or transfer of the credit in the bank has been made to either corporation. The 39 members who are authorizing the prosecution of the instant complaint have a right to join or not to join either corporation. Apparently, they are members of Club Rovnan. Should the unincorporated association decide to dissolve after paying its debts, the funds may be distributed among the members, or applied as the members choose. If, on distribution of the funds, the members as individuals wish to contribute these funds to either corporation, they have a right to do so. George Zarovy, not being the treasurer of the unincorporated association, has no right to retain the deposit book or certificate of beneficial interest. These

should be surrendered to the treasurer and trustees of the unincorporated association. On the filing of appropriate pleadings the chancellor could find who were the members of the unincorporated association at the time it ceased activities, whether this association should now be dissolved and decree distribution of the assets.

Turning to a consideration of that part of the decree which taxes the costs against George Zarovy, we are of the opinion that while he made a mistake, he acted in good faith. The record shows that the members of the unincorporated association had an imperfect knowledge of their rights and that this caused great confusion. We are also impressed by the fact that the plaintiffs have been acting in good faith. We find it is inequitable to tax all costs against George Zarovy. Therefore, the decree of the superior court of Cook county is reversed and the cause remanded with directions to tax the costs equally between plaintiffs and defendants, and for further proceedings not inconsistent with this opinion.

*Reversed and remanded with directions.*

HEBEL and KILEY, JJ., concur.