MATILDA HAMATY & others *vs.* THE ST. GEORGE LADIES SOCIETY & others.

Suffolk.      May 16, 1932. — June 29, 1932.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & FIELD, JJ.

*Voluntary Association. Religious Association. Corporation,* Religious.

An unincorporated association of women was formed in aid of a certain church. Thereafter certain members of the association held a secret meeting, which was not authorized by its by-laws, and voted to incorporate it. A corporation thereupon was organized, with a name substantially like that of the association. The record books and funds of the association thereafter were controlled by officers of the new corporation. The association continued its activities as before for a time, its other members being in ignorance of the formation of the corporation. There was no vote approving the formation of the corporation or to transfer the funds to the corporation, and no steps were taken to change the name or the purposes of the association in the manner prescribed by its by-laws. When the other members discovered the existence of the corporation, they elected new officers, who, in behalf of the association, brought a suit in equity against the corporation, its officers and members, in which a decree was entered enjoining the defendant corporation from representing that it was the association, from using its then corporate name or one similar to that of the association, enjoining the individual defendants from interfer-

ing with the association, and ordering the defendant corporation to pay back to the association its funds and to return certain of its property.  *Held*, that

(1) On the above facts, there was no merger of the association with the corporation;

(2) The decree was proper.

It further appeared in the suit in equity above described that the treasurer of the defendant corporation drew a check on funds of the association payable to himself and diverted the proceeds to purposes other than those of the association, in violation of its by-laws.  The decree further provided that, if the defendant corporation failed to pay over the sum for which it was accountable to the association, the treasurer himself should pay such sum up to the amount of the check.  *Held*, that such further provision of the decree was proper.

BILL IN EQUITY, filed in the Superior Court on July 31, 1930, described in the opinion.

St. George Syrian Orthodox Church Society was permitted to intervene as a party plaintiff.  The suit was referred to a master, material findings by whom are stated in the opinion.  By order of *W. A. Burns*, J., there were entered an interlocutory decree confirming the master's report, and a final decree described in the opinion.  The defendants appealed from the final decree.

The case was submitted on briefs.

*T. H. Mahony & E. Shamon*, for the defendants.

*F. W. Mansfield, C. W. Lavers & F. S. Malouf*, for the plaintiffs.

PIERCE, J.   This is an appeal by the defendants from a final decree entered for the plaintiffs upon a bill in equity, brought by the plaintiffs to restrain the defendant corporation, the officers and members thereof, and one other, from representing the corporation to be, and from permitting it to act in and for and by the name of, the unincorporated plaintiffs' organization, and for an accounting.  This case and the case of The St. George Ladies Society *vs.* Hamaty *et al.* were sent to a master and were heard together.  The master filed an extended report dealing fully with both cases.  No objections were formally taken to this report as finally settled, and it was duly confirmed by the interlocutory decree.

The pertinent facts taken from the voluminous report are

summarized as follows: The St. George Syrian Orthodox Church Society, hereinafter called the Church Society, is a society of men and was incorporated in the Commonwealth of Massachusetts on March 20, 1916, for the purpose of erecting a Syrian orthodox church in Boston. There was connected with it a ladies' branch called the St. George Orthodox Ladies Society, hereinafter called the Ladies Society, which was unincorporated and was governed by the by-laws of the Church Society and by by-laws of its own in so far as they did not conflict with the purposes of the principal society. The by-laws of the Ladies Society, among other things, provided that its name should be St. George Orthodox Ladies Society; that its purpose is to aid in promoting the interest of the church and to undertake all which contributes to its success; that its officers are to be a "President, vice-president, secretary and treasurer"; that they are to "be elected by the active members by majority vote for one year"; that "the Society shall hold regular meetings once every week on Wednesday evening"; that the meetings were to be legal if there be present ten or more members and "no absent members shall have the right to object to what the Society decides in their absence"; that majority vote affirms or rejects any proposition; and that the "Society shall exert its efforts to solicit money to help the St. George Church and work for the benefit and success of the congregation." These by-laws empowered only the president to call special meetings. By them the treasurer was required to deposit the moneys of the society in its name in some bank, and was forbidden to pay anything out of it except by check signed by her and by the president. Changes in the by-laws could be made if proposed in writing and submitted for discussion at the following meeting and if approved by two thirds of the members. The Ladies Society came into existence in 1915 or 1916 and has continued to function actively within the scope and purposes set forth in its by-laws.

On December 26, 1928, a regular meeting of the Ladies Society was held in the church hall. No action was taken in reference to incorporation. At that time the Ladies Society consisted of approximately one hundred fifty members.

"There was no meeting in the Church on December 27, 1928, or any other night in December following December 26, 1928." On December 27, 1928, eighteen members, in pursuance of word privately passed about among them, met at a private house on Oak Street for the purpose of discussing and forwarding the formation of a corporation under G. L. c. 180. No notice of this intended meeting was given to any one other than to those eighteen members, and no effort was made to notify others than those at the meeting of the intended meeting. At this special meeting twelve members then in attendance signed an agreement of association under G. L. c. 180, and entered into to them a solemn agreement "not to reveal for the present and pending formal incorporation, the steps which were in progress to that end." The "Articles of Organization" filed at the State House state the purposes of the corporation as "promoting intellectual, social and religious culture among its members"; that the name is The St. George Ladies Society; that the first meeting is appointed for December 26, 1928, at 154 Tyler Street, Boston; and that the first meeting of the subscribers was held on December 26, 1928, and on January 2, 1929. The officers named in said articles of organization are three of the twelve signers of the agreement of association.

From January 2, 1929, on, for many months, regular meetings were held on Wednesday evenings at the church hall with no outward sign of any change in activity. Some members of long standing attended these meetings in ignorance of the incorporation. There never has been any vote to transfer any money or property to the corporation; the bank in which the society funds were on deposit was not notified of any change; money taken in after March 7, 1929, was deposited in the same bank account. The same persons served as officers after the incorporation; the same record book was used, and substantial sums of money, in all $1,100, at meetings were voted and paid to the Church Society. It was never proposed in writing to change the name from St. George Orthodox Ladies Society to St. George Ladies Society or to change the purposes set forth in the by-laws of the St. George Orthodox Ladies Society.

About July 1, 1929, the governing authorities of the Church Society learned of the existence of the corporation and began to consider and discuss the matter of the incorporation. The Church Society in substance "stated that the Ladies Society had obtained a charter which to the mind of the Church Society withdrew the Ladies Society from the Church Society." On September 23, 1929, the Church Society sent a letter, copied in the report, of remonstrance and a suggestion for the amendment of the purpose of the corporation as stated in its articles of organization. This letter produced no result, and at a meeting held on November 6, 1929, it was "decided," among other things, that "Our incorporation is true and it is impossible to put one word in the charter." The corporation did not expressly adopt any by-laws as and for by-laws of the corporation, no vote was ever taken on the subject of by-laws, and it was the contention of counsel for the corporation, before the master, "that upon incorporation the by-laws of the previously unincorporated Ladies Society became and were the by-laws of the corporation" — in a word, that there was a merger of the unincorporated society in the corporate society.

On December 26, 1929, fifty-two women met at the church hall in consequence of a notice to them and to all known members of the Ladies Society not incorporators. There is no evidence that any of the twelve women incorporators was notified of the intended meeting and none of them attended it. At this meeting it was decided that the "Society elect new officers and continue its activities like the past," that is, as before the incorporation. The officers elected were the so called Hamaty group, and they are the individuals named as representative plaintiffs in this action. Thereafter, meetings were held regularly on Friday evenings in the church hall, with the consent and approval of the Church Society, by such as chose to attend meetings controlled by the Hamaty officers, and meetings were held regularly on Wednesday evenings in the church hall by those who favored the corporation. The Hamaty group kept a new record book — the old one was retained in the possession of the corporation group —

and eighty-five women functioned along lines pursued before the incorporation.  Each group contended and felt that it constituted the St. George Ladies Society.  The Church Society, about Ash Wednesday, 1930, excluded the corporation group from meeting in the church hall, both groups at that time being engaged in the same general kind of activity previously described.  Since then the corporation has not contributed anything in money or plays "for the direct benefit of the Church Society."  On March 7, 1929, there was to the credit of the society in the National Shawmut Bank $742.45.  Since that time deposits, with interest, of $1,372.53 have been made in that account, and checks have been drawn, leaving a balance of $20.08.  Of the amount drawn, $2,094.90, $1,180 have been devoted to the uses of the church.  From March 7, 1929, to February 18, 1931, the corporation received $1,641.04, and thereafter, and before April 9, 1931, the corporation treasurer, Frances Abosard, also received $13 for the society.  She drew $900 in cash from the bank.  This sum was expended by her in behalf of the defendant incorporators and of the corporation for legal expenses incident to the prosecution of the first of the two cases above referred to, and to the defence of the present second case.  There is some doubt on the master's report whether the proceeds of certain "recent social meetings" amounting to $166.12 are included in the sum of $1,641.04.  On all the evidence we think the reasonable inference is that this sum should be treated as a separate item.

The defendant Nasim Khouri was a former president of the Church Society.  He had long known the by-laws of the Church Society and was familiar with the activities of the Ladies Society.  He learned of the incorporation of the Ladies Society after that event.  Thereafter he favored the chartered society, did all he could to persuade the Church Society authorities to abandon the demands made for charter and by-law changes and aided the incorporators and the corporation in this litigation.  In February, 1930, a voluntary association was formed, called the St. George Orthodox Antiochian Church Society, with by-laws

similar to those of the Church Society. Khouri was its president. Both this society and the corporation had a so called defence committee which was to receive money for use in litigation, and "substantially all moneys received by the corporation from July 30, 1930, on, less expenses, went into the defence fund." On September 10, 1930, the incorporated Ladies Society voted that its own defence committee should pay money in the treasury of its own defence committee to the defence committee of the Antiochian Society "at any time needed." In September, 1930, the $166.12 above referred to was placed by the corporation in the hands of its own defence committee treasurer. In April, 1931, the Antiochian Society ran a play, realizing therefrom a net profit of $164.25. "The women of the incorporated society were extremely active in selling tickets to the play and in aiding its success."

No objections to the final report being filed, the facts found therein are to be taken as true.

In substance the final decree enjoined the corporation from representing that it was the women's unincorporated association connected with the Church Society, from using and conducting any corporate business under its corporate name, under the name St. George Orthodox Ladies Society or any similar name except for the purpose of paying such moneys to the St. George Orthodox Ladies Society as are to be paid under the terms of the decree; enjoined the individual defendants from interfering in any manner whatsoever with the activities of the plaintiffs; and decreed that the plaintiffs, the St. George Orthodox Ladies Society, had the exclusive right to the use of the name St. George Orthodox Ladies Society under the constitution and by-laws. In substance, it provided in paragraph 6 that the corporation should pay into court for the benefit of the Ladies Society $1,526.78 within thirty days from the date of the decree; in paragraph 7 that Frances Abosard, in substance, shall pay into court for the benefit of the Ladies Society "such part of said sum as shall not be so paid into court to the amount of . . . $1079.12 within ten days after the expiration of said thirty day period"; in paragraph 8, that the defend-

ant Nasim Khouri is enjoined from interfering with the
Ladies Society in any manner whatsoever; and in para-
graph 9, that in the event the corporation does not pay
$1,526.78 under the terms of this decree, he is ordered to
pay to the Ladies Society such part of $330.37 as shall be
necessary to make up any deficit in the payment by the cor-
poration of the sum of $1,526.78, such payment to be made
by the said defendant within ten days from the expiration
period of thirty days provided under this decree.

The paragraphs of the final decree before us, numbered
1-5, inclusive, and 8, 9, and 10, are based upon facts which
are similar to and essentially like those reported in the
case of *Balukonis* v. *Lithuanian Roman Catholic Benefit
Society*, 272 Mass. 366. In that case some of the mem-
bers of a voluntary association met at a special meeting,
of which only they were notified, and decided to incor-
porate. A charter was obtained and on the same day the
president took it to a regular monthly meeting of the as-
sociation, which was neither an annual nor a semiannual
meeting and for which no notice had been sent to the mem-
bers. The officers elected at this meeting had been nomi-
nated in the previous November as officers of the association.
In the case at bar the officers named in the charter were still
acting as officers of the association and continued so to act
for many months. In the *Balukonis* case the members voted
unanimously to accept the work of the board in obtaining
the charter. In the case at bar the master finds that in fact
there was never any unanimous approval before incorpora-
tion of the plan of incorporation, nor was there any unani-
mous vote to go on after the incorporation. In the *Balu-
konis* case there was nothing in the evidence to show action
or knowledge on the part of members of the society other
than their vote. In the case at bar there is no evidence that
any member ever took part in such a vote, and the master
finds that on May 30, 1928, the record of the meeting held
on May 23, 1928, "did not contain the matter . . . about
a vote to go on with incorporation"; and "that at no time
did the society ever approve the record in its altered form."
In the *Balukonis* case no notice concerning the charter was

sent to the members in the call for any meeting. This fact is like the finding as to absence of notice in the case at bar. In the *Balukonis* case, after the meeting when the charter was produced the funds in the bank were transferred to the corporation. In the case at bar the funds in the banks were allowed to remain in the name of the unincorporated society and the banks were not notified of any change. In the *Balukonis* case the constitution of the association provided that changes in it could be made at annual or semiannual meetings. In the case at bar the by-laws provide, in substance, that no changes shall be made without "the approval of two-thirds of the members" and they shall be void unless so approved, and it further appears that the incorporators changed the name of the association and made a declaration of the purposes of the corporation without submitting the proposal to make the changes in writing to the association. In the *Balukonis* case a group of members of the association expressed disapproval of the corporation. They met, elected new officers and voted to continue the old association in its name. The constitution provided that the officers should be elected in December, but these officers were elected in February. On January 21, 1928, a group of the members of the association proceeded in its name to maintain regular meetings and transact business. In the case at bar this is what the fifty-two persons who met on December 26, 1929, did. In the *Balukonis* case a group of eighty-nine persons demanded the funds and records of the old association, but the corporation refused to give them up, whereupon the suit was instituted. In the case at bar the record books and papers described in paragraph 10 of the final decree were in the possession of the corporation.

In the case above referred to it was held that the plaintiffs were entitled to relief; that the association "was not dissolved by the incorporation" (page 370); that there was not even a valid vote of the association that a corporation be formed. *McFadden* v. *Murphy*, 149 Mass. 341. *Sabourin* v. *Lippe*, 195 Mass. 470, 480. Upon the facts there found, as in the case at bar, no merger of the association with the corporation was accomplished. A merger

of the associations would defeat the object of the corporation as declared in the articles of organization, as it would the purposes of the association imposed by its by-laws. It is plain in the case at bar that there was no assent to a merger of the association and corporation, for the reason that all members did not know of the incorporation even after it was an accomplished fact, and it is manifest that without the assent of every member of the association there could be no incorporation of the association with a strict and formal compliance by the members of the association with the requirements of its by-laws. See *Kane* v. *Shields*, 167 Mass. 392; *Hill* v. *Rauhan Aarre*, 200 Mass. 438, 439; *Hanson* v. *Mayers*, 243 Mass. 25, 28; *Bancroft* v. *Cook*, 264 Mass. 343, 350; *Grand Lodge of Massachusetts Loyal Orange Institution* v. *Snow*, 266 Mass. 483; *Great Council of the Improved Order of Red Men of New Jersey* v. *Mohican Tribe, No. 64, Improved Order of Red Men*, 92 N. J. Eq. 593.

The election of new officers by the Hamaty group was legal in this case on the same ground that such action was legal in *McFadden* v. *Murphy*, 149 Mass. 341, and in *Balukonis* v. *Lithuanian Roman Catholic Benefit Society*, 272 Mass. 366.

As respects paragraph 10 of the final decree, it seems obvious that the exhibits therein referred to are the property of the Ladies Society and not of the corporation or of the individual defendants, and that the association members are entitled to have and control such documents and things as are enumerated in the final decree. *McFadden* v. *Murphy*, 149 Mass. 341, 346. *Donovan* v. *Danielson*, 271 Mass. 267, 272. *Balukonis* v. *Lithuanian Roman Catholic Benefit Society*, 272 Mass. 366, 372.

It is clear, and is not denied by the defendants, that the plaintiffs are entitled to an accounting of the $742.45 which was standing to the credit of The St. George Ladies Society when the defendant corporation was incorporated on March 7, 1929, and assumed through its officers the control of the society's bank account. It is shown by the society's records that from March 7, 1929, until February

18, 1931, the society received $1,641.04, and from its treasurer $13, in all $1,654.04. It is inferable that the defendant corporation received or had the direct benefit of the sums of $164.25 and $166.12. The total of all these sums is $2,726.86. It is agreed by the plaintiffs that as against this total $1,200.08 should be credited to the defendants. Respecting this statement of account the defendants contend that the amount on deposit in the bank to the credit of the plaintiffs' society when, following the incorporation, those assets were taken over by the officers of the incorporated society, has been accounted for and that the moneys received by its officers were moneys which were corporation funds. We are of opinion that this position is unsound for the reason that those moneys were wrongfully diverted from the possession and control of the plaintiffs by the defendants while functioning in the mistaken belief that the association was merged in the corporation.

Paragraph 7 of the final decree should be affirmed for the reason that the treasurer, Frances Abosard, called in the report Frances Bousard, while treasurer of the society represented by the plaintiffs and also while treasurer of the corporate defendant, drew a check for $900, payable to herself, on the funds on deposit to the credit of the plaintiffs and diverted the proceeds to purposes other than the interests of the plaintiffs, and that this action was in violation of the by-law of the association.

We do not find any ground upon which that part of the final decree against Nasim Khouri which is set down in paragraph 9 of that decree can stand; it must therefore be reversed.

It follows that paragraph 9 of the final decree is reversed and that the decree as so modified is to be affirmed with costs.

*Ordered accordingly.*