FRANK C. BACON & others *vs.* WILLIAM PARADISE & others.

Berkshire.    September 18, 1945. — November 5, 1945.

Present: FIELD, C.J.; QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Voluntary Association. Labor and Labor Union. Notice. Equity Jurisdiction,* Class suit. *Equity Pleading and Practice,* Parties.

Statement by QUA, J., as to property rights of a member of a voluntary association.

The "Constitution and By-laws" of a labor union, a voluntary association, which provided that a "regular meeting of this union will be held once a month, time and place to be designated by the President,"

but contained no express provision about notice to the members, implicitly required that the members be given such notice of a meeting as would be reasonably effective in the circumstances to enable them to be present and protect their rights.

Although it had not been customary in a certain labor union, a voluntary association, to state the subject matter of meetings of its members in notices thereof and its "Constitution and By-laws" contained no more as to notices of meetings than the implicit requirement that the members be given such notice as was reasonably sufficient in the circumstances, a vote at a meeting to change the association from an independent organization confined to the employees of one employer, having no affiliation with any larger organization, into an affiliated local of a large national labor organization, was invalid because the notice of that meeting, while it stated that the meeting would be "very important," did not state that that subject matter was to be acted on and members opposed to affiliation did not know that it would be.

An independent voluntary labor association comprising the employees of one employer and having no affiliation with any larger organization continued to exist after an invalid vote at a meeting of its members to change it into an affiliated local of a large national labor organization, which was opposed by certain members, and it was still entitled to its property as against the purported new affiliated local initiated by members favorable to affiliation.

Temporary officers of an independent voluntary labor association, chosen by a group of members opposed to affiliation after there had been an invalid vote at a meeting of its members to change the organization into an affiliated local of a large national labor organization and all its former officers had abandoned their offices and gone over to the purported new affiliated local, had sufficient standing, as representatives of the group seeking to keep the original organization in existence, to maintain a suit in equity to secure to it its funds, books and other assets, although they were not elected in the manner required by its "Constitution and By-laws."

BILL IN EQUITY, filed in the Superior Court on December 20, 1943.

After confirmation of a master's report, a final decree dismissing the bill was entered by order of *Burns*, J. The plaintiffs appealed from that decree and from certain interlocutory decrees.

*J. N. Alberti*, for the plaintiffs.

*S. E. Angoff*, for the individual defendants.

QUA, J. This controversy is between two groups of employees of Brightwater Paper Co. in Adams, each claiming the funds, books, and other assets now or formerly of a voluntary association known as Independent Paper Work-

ers' Union # 1. The named plaintiffs contend that this
association still exists in its original form, and that they
are its officers and are representative of its membership.
The named defendants, except the First National Bank,
contend that the association has become affiliated with
United Mine Workers of America, District 50, and is now
a voluntary association known as Local 12796 of that
organization, and that Local 12796 is the continuation of
Independent and now owns its assets. The named defend-
ants, except the bank, are officers of Local 12796.

The facts appear from the pleadings and the findings of
the master. Independent was organized in 1938. It had
no affiliation with any larger union. At an election of em-
ployees of the Brightwater Paper Co. held on September
2, 1943, under the supervision of the National Labor Rela-
tions Board, Independent had defeated District 50 of the
United Mine Workers and had been certified by the board.
Thereafter it had a contract with the paper company rela-
tive to conditions of employment. Notwithstanding these
facts "a certain portion," apparently a large portion, of
the members of Independent desired affiliation with District
50. Discussion of the matter continued. At an election of
officers of Independent on September 26, 1943, officers favor-
ing affiliation were elected by a large majority of those
present. But Independent's fundamental law, called "Con-
stitution and By-laws," contained provisions that the union
could not be disbanded as long as twenty members wished
to carry it on, and that the books, money, and other assets
"belong to these remaining members to carry on this union."
These provisions might well stand in the way of affiliation.
However, the "Constitution and By-laws" contained other
provisions that "the constitution" might be amended by a
two-thirds vote of the members "at any regular meeting";
that a "regular meeting of this union will be held once a
month, time and place to be designated by the President";
and that at least twenty members must be present. Ac-
cordingly, steps were taken to procure amendments. At
a meeting held on October 31, 1943, the number of members
attending which does not appear, a motion was carried that

the president appoint a committee to bring in a new set of by-laws to be accepted or rejected at the next regular meeting. The records show no opposition to this motion, but it does not appear that there was any direct allusion to affiliation on October 31. The newly elected president "designedly" made up the committee of members who desired affiliation. This committee, after consulting with organizers of United Mine Workers, prepared a new "Constitution and By-laws" for Independent to "supersede and cancel" the former document. This revision was based upon the original "Constitution and By-laws," but it contained a new "Article X" which included provisions (contrary to those of the original) under which the union could be "disbanded" by a vote of two thirds of the dues-paying members present at a regular meeting, and that the union might affiliate with another union "by consent of two-thirds vote of the members present at a regular meeting," in which· case all property and contracts of Independent should "become the property of the succeeding Local Union." The next meeting of Independent was held on November 21, 1943. Whether the time and place were "designated by the President" as required by the "Constitution and By-laws" of Independent does not appear. We assume that they were. The master finds that "some time" prior to November 21 placards were posted in such places in the plant as would be likely to bring them to the notice of members stating that a "very important meeting" would be held by Independent at a specified place at 7 P.M. on that day, and that refreshments would be served. This was the only notice of the meeting published or distributed. It stated nothing whatever as to the business to be transacted at the meeting. It was, however, "the type of notice, and placed at the type of place, as was customary in notifying members of union meetings." It had never been the custom to mail or to distribute notices to individual members or to specify particularly the business to be taken up. "The place and time [by "time" here we understand the master to mean the hour] of meeting were those customary to meetings" of Independent. The master finds that members

of Independent who were interested enough in its affairs customarily to attend meetings knew that the matter of revision of by-laws was to be taken up, but he states that he does not find that they knew what form the revision was to take. He finds that members "known to be opposed to affiliation" did not know of the purpose to adopt the new Article X or that a vote to affiliate would be taken at the meeting. The meeting was held at the designated place and hour. Forty-two members were present out of a total of one hundred forty members regarded as in good standing. Although less than a third of the members were present, this was an average attendance at meetings of Independent. After discussion, the new "Constitution and By-laws" was adopted by a vote of thirty-eight to four. But the meeting did not stop there. A motion to affiliate with United Mine Workers, District 50, was made and carried by the same vote. From that moment the majority of those present at the meeting regarded themselves as no longer members of Independent but as members of Local 12796, District 50, of United Mine Workers of America. The charter from District 50 was received December 12.

Although the decision of the case must principally depend upon the validity of the action taken at the crucial meeting of November 21, some subsequent events are not without significance. On November 22, the secretary, now acting as secretary of Local 12796, gave notice to the employer of cancellation of the existing contract. At a meeting of Local 12796 on December 5 a number of the faction opposed to affiliation attended by invitation. After an address by an organizer on the advantages of belonging to the United Mine Workers, the newly elected president said that those who wished to belong to District 50 would come forward, and that "the rest would be excused." Thereupon a number left, and twenty persons who on November 21 were in good standing as members of Independent held a meeting which they considered a special meeting of Independent and elected the named plaintiffs as temporary officers. Since that time "the independents" have continued to regard themselves as the original union and have held

meetings and taken action as such. On February 18, 1944, the National Labor Relations Board conducted a second election to determine whether the employees desired to be represented by Local 12796 or by Independent. The vote was one hundred thirty-eight to one hundred fifteen in favor of Local 12796, which the board thereupon certified as bargaining representative. At all times after November 21, 1943, from twenty to fifty persons, members in good standing of Independent on that date, were opposed to disbandment or affiliation. At the time of the hearing before the master about fifty such persons were members of the organization calling itself Independent Paper Workers' Union # 1. A majority, however, of those who were members in good standing on November 21, 1943, favored and at the time of the hearing before the master still favored affiliation with the United Mine Workers.

The master finds that both factions have acted in good faith in what they have done and in claiming that they were entitled to the assets of Independent.

Every member of a voluntary association like Independent has a property right in its assets. Where the objects and methods of the association have been defined by mutual agreement and embodied in a set of fundamental rules for the purpose of governing its operations, whether those rules are called "Constitution and By-laws" or by some other name, a member has the right either to have the assets retained in the continuing control of the association and devoted by it to the defined objects according to the established rules or to insist that if changes are to be made they be made in accordance with the rules and only after such notice as the rules require. Ordinarily a member cannot be deprived of this right without his consent by a majority vote of his associates. *Torrey* v. *Baker,* 1 Allen, 120. *McFadden* v. *Murphy,* 149 Mass. 341. *Kane* v. *Shields,* 167 Mass. 392. *Goulding* v. *Standish,* 182 Mass. 401. *Sabourin* v. *Lippe,* 195 Mass. 470. *Hill* v. *Rauhan Aarre,* 200 Mass. 438. *Hanson* v. *Mayers,* 243 Mass. 25. *Balukonis* v. *Lithuanian Roman Catholic Benefit Society,* 272 Mass. 366. *Hamaty* v. *St. George Ladies Society,* 280 Mass. 58, 67.

As hereinbefore stated, the "Constitution and By-laws" of Independent permitted amendments "by a two thirds vote of the members of the union at any regular meeting" and provided that a regular meeting be held once a month, "time and place to be designated by the President." Nothing is said about notice to the members. It seems that Independent had no regular meetings in the sense of meetings held at certain specified times and places with which the members might be presumed to be acquainted. Notice of some kind to the members was necessary if meetings were to be held at all. We think it implicit in the constitution of the association that notice be given, and although no technical forms were required, we can think of no reason why such notice should be anything less than whatever under the circumstances would be reasonably effective to enable the members to be present and to protect their rights by their arguments and their votes. It may be that posting placards in the plant was a reasonably sufficient means of giving notice to the members. It may be that where ordinary business was to be transacted the notice need not state the matters to be acted upon. It may be that in view of the provisions of the original "Constitution and By-laws" to which reference has just been made the new "Constitution and By-laws" could be adopted to govern future meetings at a meeting notified by posting placards without any statement in the notice that such action was contemplated. We need not decide these questions. And we need not decide whether the "two thirds vote of the members of the union at any regular meeting" required for an amendment meant two thirds of the entire membership or merely two thirds of those present. But the vote to affiliate with District 50 passed on November 21 requires further consideration. While the findings do not disclose just what control District 50 or the United Mine Workers would have over a local or its property, an inference seems justified that that control would be substantial. The character of Independent as a separate organization of the employees of a single employer would be radically altered. Its members and its property would be subject to new and different

obligations. Its contract with the employer might be prejudiced. The bargaining position which it had won at an election a little over two months before would in effect be surrendered in favor of the rival which it had defeated at that time. Affiliation might be akin to a death sentence to Independent as it had previously existed. All this might be desirable, but it is plain that a good many members thought otherwise. A vote to change Independent into a local of a national organization was in no sense routine business. It was not the kind of thing which an uninformed member would expect to be done even at a "very important" meeting. We doubt whether it could legally be done at all under the "Constitution and By-laws" as they stood before the meeting. See *McFadden* v. *Murphy*, 149 Mass. 341, 342. In these circumstances we think that fair dealing and a just regard for the rights of all the members required that they should be notified of the subject matter to be dealt with at any meeting which should deal with affiliation and that notice that the meeting was "very important" was not enough.

It has been held in a number of jurisdictions in varying circumstances that where the law of the association contains no provision for notice, and where the meeting is to deal with such important matters as dissolution or absorption into another organization such as a corporation, notice must be given not only of the time and place of the meeting but also of its objects. *Martinek* v. *Zarovy*, 318 Ill. App. 605, 618–619. *St. Mary's Benevolent Association* v. *Lynch*, 64 N. H. 213. *Rudolph* v. *Southern Beneficial League*, 23 Abb. N. C. 199, 208. *Goller* v. *Stubenhaus*, 77 Misc. (N. Y.) 29, affirmed 140 App. Div. (N. Y.) 913. *Industrial Trust Co.* v. *Green*, 17 R. I. 586, 590. *State* v. *Seattle Baseball Association*, 61 Wash. 79. See *Ace Bus Transportation Co.* v. *South Hudson County Boulevard Bus Owners Association*, 118 N. J. Eq. 31, at 47, affirmed 119 N. J. Eq. 37; *Ostrom* v. *Greene*, 20 Misc. (N. Y.) 177, affirmed 30 App. Div. (N. Y.) 621, affirmed 161 N. Y. 353. It is true that in some, if not in all, of these cases the meeting was described as "special," but we conceive that the matter of importance is not the characterization of the meeting but is the gravity

of the subject to be dealt with and the lack on the part of members of reason to suppose that such a subject might come before such a meeting. See *Wiggin* v. *First Freewill Baptist Church in Lowell*, 8 Met. 301, 312.

For the reasons stated we conclude that the vote of affiliation taken on November 21, 1943, was invalid for want of notice to the members of the proposed action, and that Independent continues to exist as a separate voluntary association and is still entitled to its property.

The defendants object that even if Independent still exists the named plaintiffs do not properly represent it, since they were not elected at a duly called meeting or by Australian ballot as required by the "Constitution and By-laws." But the regular officers of Independent had all abandoned their offices in that association and had gone over to Local 12796. We think that they had ceased to be members of Independent. *McFadden* v. *Murphy*, 149 Mass. 341, 345. *Sabourin* v. *Lippe*, 195 Mass. 470, 480. *Martin* v. *Smith*, 286 Mass. 227, 233, 234. There was no president to call a meeting. The members who desired to continue the association were obliged to act informally. They chose the named plaintiffs as temporary officers. Subsequent meetings of "the independents" were held, at one of which the election of the temporary officers and the prosecution of this suit were "ratified." Meetings continued to be held to the time of the hearing before the master. It may fairly be inferred that the temporary officers continued to act. None of "the independents" has sought to intervene in this suit. The association should not lose its rights through want of officers. Whatever may be the status of these temporary "officers" in other respects, we think they are sufficiently representative of the group which desired to keep Independent alive so that they may be named as representative plaintiffs in this suit. A similar result has been reached in other cases. *McFadden* v. *Murphy*, 149 Mass. 341, 344–345. *Sabourin* v. *Lippe*, 195 Mass. 470, 480–481. *Balukonis* v. *Lithuanian Roman Catholic Benefit Society*, 272 Mass. 366, 370–371. *Hamaty* v. *St. George Ladies Society*, 280 Mass. 58, 62, 67.

There is no question of exhausting remedies within the association. No remedy was available to the plaintiffs other than to proceed as they did. *Baron v. Fontes*, 311 Mass. 473, 476.

The plaintiffs' appeals from interlocutory decrees on certain motions are immaterial and are dismissed. The final decree is reversed, and a final decree is to be entered securing to Independent Paper Workers' Union #1 through the named plaintiffs as its representatives its property which it held on November 21, 1943, together with costs of this appeal. The facts found will not support any additional relief.

*So ordered.*