**TALTON et al. v. BEHNCKE.**
No. 51 C 1158.

United States District Court
N. D. Illinois, E. D.

June 25, 1952.

Lucas & Thomas, Edwin R. Hackett, Chicago, Ill., for plaintiffs.

Daniel D. Carmell, I. Harvey Levinson, Chicago, Ill., for defendant.

LA BUY, District Judge.

J. P. Talton and seven others, individually and as members of the Executive Board and of the Board of Directors of Alpa, a labor union, and on behalf of all members of the union, filed their complaint seeking to restrain the defendant, David L. Behncke, from exercising the office of president of Alpa and interfering with Alpa's business personnel. The complaint prays that the defendant be directed to release all funds and property of Alpa under his control and deliver possession of the president's office and Alpa records to Clarence N. Sayen, alleged to be the president of Alpa, for damages against the defendant for allegedly spending monies in excess of that allocated by Alpa's directors or Executive Board members in the construction of Alpa's headquarters, and for resultant damages from the defendant holding himself out as the president of Alpa.

The defendant answers and counterclaims alleging he was elected president of Alpa for the current term expiring January 1, 1953; that the plaintiffs and others have conspired to remove him from office and pursuant thereto held an illegal meeting on July 16–17, 1951 purporting to amend the constitution and by-laws of Alpa so as to shift the power of recalling the president from the membership to the board of directors; that the meeting was illegally convened and the amendment was illegally adopted; that he was illegally recalled from the office of president July 16, 1951; that Clarence Sayen was illegally declared to be president for the unexpired term caused by such recall; that the defendant was divested of his right to the office without notice, trial or hearing and that he still is the duly elected and acting president of Alpa. Defendant denies that in supervising the building of Alpa's headquarters he exceeded his authority by spending money in excess of that allocated for that purpose. He alleges that he made periodic reports to the Executive Board, the board of directors and the members of Alpa who confirmed his action. He asserts that since he is president of Alpa he could not be held responsive to damages for exercising that office; that Sayen is an interloper and he prays an injunction against the plaintiffs to restrain them from interfering with his execution of the office of presi-

dent and asks for damages resulting from their interference with his duties.

Both parties applied to the court for a temporary restraining order. In view of the conflicting allegations contained in the pleadings, the court held that no temporary injunction should issue and a supervisor of the assets and affairs of Alpa was appointed. All motions for temporary and permanent relief and all actions and counterclaims were consolidated for hearing and referred to a master in chancery to take the proofs and report his findings of fact and conclusions of law to the court. The master has filed his report and both plaintiffs and defendant have filed objections thereto.

Alpa is an unincorporated voluntary association, commonly known as a trade union, having more than 6,000 members who are employed by forty or more major airlines in the United States with whom Alpa has collective bargaining agreements. Alpa has a constitution and by-laws which have been introduced in evidence.

At a board of directors meeting on July 16, 1951, Section 10, Article VIII of the by-laws were amended vesting in the board of directors the power to recall the president. The president was thereupon removed by the board of directors at said meeting and Sayen was appointed president on the same day. The defendant contends that the amendment is invalid and that the president can only be recalled by a petition signed by thirty percent of all the members of Alpa and concurred in by a vote of two-thirds of all Alpa members. The plaintiffs concede that if such amendment was illegally adopted, then their action for injunctive relief must fail.

This case presents a number of important questions of law involving labor unions. One of the principal contentions of the defendant is that the procedure followed by the board of directors in attempting to remove him from the office of president violated due process of law and was contrary to natural justice.

█ It is inherent in the judicial process of our system of government, applicable as well to labor unions, that every man is entitled to notice, to a specification of charges against him, to confront witnesses against him, and to be given an opportunity to be heard in his own defense. These same principles apply to officers who are elected for a definite term in labor unions, and are clearly defined in "The Law of Labor Unions", Dangel & Schriber, at page 229:

"Officers who have been elected for a definite term, on the other hand, may not be suspended or removed from office without notice of the charges and an opportunity to reply, and without cause."

In National City Bank v. Union, D.C. Puerto Rico 1949, 83 F.Supp. 235, 238, 239, an interpleader was filed wherein the National City Bank of New York sought a judicial determination of ownership to certain funds deposited in their bank by the union. Two union groups claimed ownership. The group known as the independent group held a meeting and elected a new provisional board of directors. The new board took office immediately and voted to separate from the old union. The court declared the election of the new board of directors void and held as follows:

"(d) no charges were over preferred against the President and Officers of the C. G. T. Union and no hearings were ever had for the purpose of ousting the old officials".

In this same opinion the court quoted with approval from State ex rel. Welch v. Passaic Hospital Ass'n, 59 N.J.L. 142, 36 A. 702, which involved expulsion of a member of the board of governors without a hearing when the constitution required an inquiry to be held before such action could be taken, as follows:

"* * * Of course, in the case at bar, the by-laws have no provision with respect to removal of officers. But in the Welch case, the New Jersey court after stating the above principle, continues and lays down the following general principle, applicable to the case at bar: 'But if the constitution and by-laws were silent upon this subject, and did not provide for an inquiry and determination, still these elements of

judicial action would be absolutely necessary. He must have had notice, and must have been given an opportunity to be heard upon charges or complaint presented against him.'

\* \* \* "

It appears clear that even if the constitution and by-laws are silent in respect to the removal of officers that no officer may be removed without notice and an opportunity to be heard.

In Bricklayers etc. v. Bowen, Sup., 183 N.Y.S. 855, 859, this principle is reaffirmed:

" \* \* \* the law is vigilant to prevent a violation of the constitution and by-laws of the association involved, and to see to it that suspension or expulsion is only had after fair notice to the offending member and full opportunity to be heard in his own behalf. In other words, the law insures to every member of such an association a fair trial, not only in accordance with the constitution and by-laws of the association, but also with the demands of fair play, which in the final analysis is the spirit of the law of the land."

In Bentley v. Hurley, 1927, 222 Mo.App. 51, 299 S.W. 604, 606, it is stated:

"Defendant had no notice that any action seeking to declare her office vacant was to be taken at this meeting and she was not present. There were no charges and no trial."

Further, in Joint Anti-Fascist Refugee Committee v. McGrath, 1951, 341 U.S. 123, at page 170, 71 S.Ct. 624, at page 647, 95 L.Ed. 817, Mr. Justice Frankfurter in speaking of the due process required in civil proceedings stated:

"The heart of the matter is that democracy implies respect for the elementary rights of men, however suspect or unworthy; a democratic government therefore must practice fairness; and fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights."

He also quoted with approval from the Report of the Committee On Ministers' Powers, Cmd. 4060, pp. 75–80 appearing in the footnote 341 U.S. at page 170, 71 S.Ct. at page 648, 95 L.Ed. 817:

" \* \* \* Three principles of 'natural justice' were stated to be that 'a man may not be a judge in his own cause,' that 'No party ought to be condemned unheard,' and that 'a party is entitled to know the reason for the decision.' "

Many other cases establish the same principles. It is clear that under our system of jurisprudence and following the principles of due processes contained in the Constitution of the United States, that due process is equally applicable to labor unions; and that, whether or not the constitution or by-laws of the union provide for same, neither a member nor an officer elected for a definite term may be removed from office without reasonable notice, a specification of charges against him and an opportunity to be heard in his own defense.

Plaintiffs rely upon Elevator Operators, etc., v. Newman, 1947, 30 Cal.2d 799, 186 P. 2d 1, 3. Newman was elected treasurer of the union for a period of two years. At a regular membership meeting of the union, an amendment was proposed that only members who are employed as elevator operators, under the jurisdiction of the union, shall be allowed to hold office in the union with the exception of members filling the full time office. This section became effective thirty days after passage by the membership. Newman was present at the meeting, opposed the amendment, and after full consideration, a vote was taken and the amendment passed. He thereafter refused to comply by becoming an elevator operator, being a part time officer, and his office was declared vacant and a new treasurer elected. The Supreme Court of California held as follows:

"Since the term for which appellant was elected expired on December 31, 1943, there is no longer any controversy as to whether he is now entitled to reinstatement as treasurer of the union. The issues have therefore become moot, except for appellant's claim for back salary for the part of his term of office that was unexpired when the union ceased to pay his salary.

"Appellant contends that the back salary is due him on the ground that he was the treasurer of the union until the end of the term for which he was elected, * * *.

"* * * In the course of the appellate proceedings appellant waived his objection to the manner of adoption of this amendment. * * *"

The court concluded nevertheless that he was entitled to a salary.

The case of Cason v. Glass Bottle Blowers Ass'n, Cal.App., 1950, 220 P.2d 34, at page 40, distinguishes the Newman case:

"Appellants rely on the case of Elevator Operators, etc., Union v. Newman, 30 Cal.2d 799, 186 P.2d 1, but that case is not helpful to them for it merely decides that mandamus does not lie where there is no cause of action for reinstatement to a position, but merely a claim for damages for breach of contract. * * *"

In affirming and modifying the Superior Court in the Cason case, the Supreme Court of California in its opinion appearing in 37 Cal.2d 134, 231 P.2d 6, at page 11, stated:

"* * * It is a fundamental principle of justice that no man may be condemned or prejudiced in his rights without an opportunity to make his defense, and this principle is applicable not only to courts but also to labor unions and similar organizations. (Citing cases.) * * * The union's procedure, however, must be such as will afford the accused member substantial justice, and the requirements of a fair trial will be imposed even though the rules of the union fail to provide therefor. (Citing cases.) The authorities recognize that such a trial includes the right to notice of the charges, to confront and cross-examine the accusers, and to examine and refute the evidence. * * *"

It was conceded by counsel in the case at bar that the honesty of the president, Behncke, was beyond question and no question was raised as to his integrity in any of his actions. It was also conceded that he was the founder of Alpa and has been its president since its inception in 1931.

Counsel for plaintiffs further argue that Behncke is not entitled to the protection of the courts because his property rights may not be involved. Personal rights are entitled to the protection of the courts. To hold otherwise would be to deny the rights of due process to Behncke and to deprive him of his constitutional right to notice, hearing and an opportunity to be heard in his own defense.

The evidence in this case shows that Behncke did not receive any specification of charges against him, was not accorded a hearing on any charges whatsoever, and was not given any opportunity to appear and defend himself against such action.

The next contention which the court must consider is whether the amendment of the recall provision of the union constitution and by-laws was valid. The constitution and by-laws of an association establish and define the rights, privileges and duties of the members between themselves and between the members and the association with reference to the internal government and management of its affairs and these constitute the contract between the members. Amendments and new by-laws may be adopted under the provisions of Alpa's constitution and by-laws. Article I, Section 12 thereof provides:

"The Constitution and By-Laws may be amended, added to, or any part or parts thereof may be repealed by an affirmative vote of the majority of the delegates in attendance at a Convention. The provisions of this section notwithstanding, the Constitution and By-Laws may be amended, added to, or any part of parts thereof may be repealed between Conventions by a majority vote of the Board of Directors at any meeting called by its Chairman at which seventy-five per cent of all such Directors are present in person or by proxy, or by ballot mailed by him to all the members of the Board of Directors."

Amendments may therefore be adopted provided the alteration is not inconsistent with the fundamental scheme of the society and does not destroy vested rights. 7 C.J.S., Associations, § 11, page 34. As was stated in State ex rel. Curtis v. McCullough, 1867, 3 Nev. 202:

"Notwithstanding the trustees are authorized to amend the by-laws, yet it must be conceded that they have not the right to so amend them as to deprive the stockholders of those fundamental rights by which they control the officers of the corporation. * * *

"That the trustees should have the power to amend the by-laws is almost a matter of necessity; but as the trustees are simply the representatives of the corporation, they have no right to do anything in their official capacity which is prejudicial to the interests of their constituents, or to interfere with the powers which the stockholders have reserved unto themselves."

See also Stevens v. Davison, 1868, 59 Va. 819.

■■■■ As a general proposition of law the rule is that removal of an officer of a corporation must be by the body authorized in the first instance to elect and appoint him, and that action of some kind by the body thus vested with the power of removal, signifying its intention that the incumbent shall no longer hold office is necessary to constitute a removal. 2 Fletcher, Cyclopedia Corporations, Section 357, page 115; Ginter v. Heco Envelope Co., 1925, 316 Ill. 183, 147 N.E. 42. The present constitution and by-laws provide for election and removal as follows:

Article VIII, Section 2(c) provides: "all Association officers shall be nominated from the floor of the Convention, and shall be elected by a majority vote of the delegates in attendance at such Convention and their terms of office shall become effective on January 1 following such election."

Article VIII, Section 10 provided: "Thirty per cent of the entire active Association membership in good standing may at any time petition the Board of Directors and cause a recall ballot to be taken on any Association officer of the status named in Article VIII, Section 1 of the Constitution and By-Laws. In any such recall ballot a two-thirds majority vote of all the active Association members in good standing shall be necessary to determine whether or not any such Association officer shall be recalled, * * *."

The power to elect is here vested in the members as shown by Section 2(c), Article VIII and the power to recall was expressly reserved to the members by Section 10, Article VIII. The strictness with which courts construe the power of removal is illustrated in Laughlin v. Geer, 1905, 121 Ill.App. 534. Briefly, the board of directors at a meeting where defendant was absent adopted an order directing that notice be given him of charges preferred against him and giving him an opportunity to show cause why he should not be removed from the office of director. The defendant sought an injunction restraining his removal. The court stated that Chapter 32, Section 6 provides that the board may remove "officers" when the interests of the corporation shall require and that a director is not an officer. On page 539, of 121 Ill. App., it stated as follows:

"If the board of directors of a corporation organized under the laws of this state have not the power to remove a director duly elected and serving, it has no power to adopt a by-law for that purpose. The section of the by-laws, therefore, under which the defendants were proceeding to remove the complainant is, in our judgment, void."

The court is of the opinion that the amendment enacted at the July 16, 1951 meeting is invalid for the reason that the board of directors had no right or power to deprive the members of the rights reserved to them under the constitution and by-laws as enacted. Only by a vote of the members could the constitution and by-laws be amended to provide a recall by the Board of Directors.

■■■■ It is also contended that the notice given to the members of the board of directors of the meeting of July 16, 1951 was insufficient and therefore invalid. During

May 1951 Alpa was engaged in negotiations with American and United Airlines. Strike action against these carriers was contemplated. Behncke therefore called Alpa's executive board into special session to meet on June 12, 1951 for the purpose of considering strike problems. There is some dispute as to whether or not this meeting remained in continuous session or adjourned. In any event, it reconvened on July 12, 1951, where it proceeded to authorize the issuance of a call to the board of directors at an emergency meeting on July 16, 1951 at 10:00 o'clock A.M. at Chicago, Illinois. The notice was dispatched on the morning of July 13, 1951 and contained among the following things, the following agenda:

"Notice

"*Agenda*

"Consideration of the Executive Board Sub-Committee's Report, its recommendations, and all ramifications thereof."

Copies of three resolutions were included in the notice. One notified the board of directors that a sub-committee has submitted a report and that the fullest consideration should be given to the report; the second changes the signatures required for expenditure of funds so as to authorize the signature of the secretary to be used in lieu of the president's signature on all checks; and the third authorizes the secretary and treasurer to open bank accounts in a new bank.

Therefore, the members of the board of directors had no notice that the by-laws were to be amended at the July 16th meeting so as to divest the members of the power to recall the president and to vest the same in the board of directors. In Martinek v. Zarovy, 318 Ill.App. 605, 619, 48 N.E.2d 760, 766, the court stated:

"This was a special meeting. * * * Where a special meeting is called by an association for the transaction of business of an unusual nature, reasonable notice of the time, place and object of the meeting must be given * * *."

To the same effect is Bacon v. Paradise, 318 Mass. 649, 63 N.E.2d 571, 167 A.L.R. 1227; State ex rel. Rowland v. Seattle Baseball Ass'n, 61 Wash. 79, 111 P. 1055, 1056, 1057, 31 L.R.A.,N.S., 512. In the last cited case the court stated:

"We think that it is fundamental that where a special meeting is called by an organized body, reasonable notice of the time, place, and object of the meeting must be given, and that no business can be transacted that is not specified in the notice, unless all members are present and give their consent."

Counsel for plaintiffs argue that this is an adjourned meeting and that a general statement of the purpose of the meeting is sufficient. The original meeting was called by Behncke to discuss certain strike problems. The notice of the original meeting contained no reference to a proposal to amend the constitution, nor did notice of the meeting of July 16th contain any such reference. In any event, both of the meetings were special meetings. They were called for specific purposes. The fact that the notices included such general statements as "to take up such other business as may come before the meeting", and "to consider a report and all of its ramifications", is not sufficient notice to authorize the board of directors to adopt vital and fundamental changes in the provisions of the constitution and by-laws of the association.

Therefore, it is apparent that no reasonable notice was given to the Board of Directors that the subject of the meeting of July 16th would be the question of removing Behncke. It follows that the notice given to the board of directors was not sufficient in law to constitute the notice required for such action. At the meeting of July 16, 1951 a vote was taken as to the amendment of the constitution. The master's report finds that this vote was adopted by a "show of hands". The evidence clearly shows, however, that the actual vote taken was by a voice vote and not by "show of hands". The finding of the master to the effect that a vote on the question of the resolution to amend the constitution was taken by a "show of hands" was clearly erroneous. However, in view of the prior holdings of the court on the questions of due process

and validity of the amendment and sufficiency of notice, nothing would be gained by going into the merits of this finding.

Numerous other questions were raised by counsel for Behncke from which it is contended that the ouster of Behncke was illegal and void. For example, they argue that the entire meeting of July 16th was void because only the chairman, Behncke, could have legally called a special meeting; that four days notice to the board of directors could not be held to be reasonable notice since the directors are scattered all over the world and would not have an opportunity to reach the meeting in time; that all the directors were not notified and that the failure to notify even one director vitiates the entire meeting; that only forty-seven directors at the meeting were in good standing and were not behind in dues; and that the constitution of Alpa denies all rights, privileges and benefits whatsoever to members in bad standing; that a member in bad standing is defined by Alpa's constitution as one who has not paid his dues in full; that therefore only forty-seven directors at the meeting were actually qualified to vote. They also argue that the amendment attempting to oust Behncke was retrospective in nature and attempts to oust him by retroactive action from an office for which he was elected by the members for two years beginning January 1, 1951 and expiring January 1, 1953; that the court should construe amendments as having prospective effect only. Many cases are cited in support of these contentions. However, in view of the fact that the court has already determined that the ouster of Behncke was illegal and void because it was a violation of the requirements of due process, fairness and natural justice and for the other reasons set forth in this opinion, it is unnecessary to decide these numerous other questions of law raised by counsel.

 Certain other questions are raised by the parties in their pleadings. The special master found that the plaintiffs were entitled to bring their action as a class suit. The court concurs in this conclusion.

The master also found that inasmuch as this action was commenced as a class suit, the costs of said suit should be borne by Alpa. Inasmuch as it is vital to Alpa to have determined the question of its lawful president and inasmuch as both parties contend that they were endeavoring to protect the funds and property of the association, the court concludes that that portion of the master's report finding that all costs of this suit shall be borne by Alpa be approved.

For the reasons hereinabove stated, the court has reached the conclusion that the removal of Behncke was not in accordance with the fundamental principles of due process and natural justice requiring notice, specification of charges, a hearing, and an opportunity to defend; that Behncke having been elected by the members of the association could only be recalled in accordance with the methods provided by the constitution and by-laws, that is, by petition of thirty per cent of all the members of Alpa concurred in by a vote of two-thirds of all Alpa members; that the action of the board of directors on July 16th depriving the members of the power of recall and investing that power in themselves was invalid; that such a transfer of the recall power could only be effected by action of the members of the association; that no reasonable notice was given to the board of directors that the subject of the meeting of July 16th would be the question of removing Behncke; that the notice given the board of directors was not sufficient in law to constitute the notice required for such action.

The court finds that the action of the board of directors removing Behncke from the office of president of Alpa is illegal and void, and that Behncke is the lawful president of Alpa and entitled to exercise all of the rights and prerogatives of the office of President of the Association.

The complaint filed herein seeking to restrain Behncke from exercising the duties of the office of president of Alpa should be dismissed. Counsel are instructed to present a decree in accord herewith at 10:00 A.M. on July 10, 1952.