70  163
f126 544

[No. 9232.   Department One. — July 19, 1886.]

J. J. McCALLION ET AL., RESPONDENTS, v. HIBERNIA SAVINGS AND LOAN SOCIETY ET AL.   EDWARD DEVLIN ET AL., APPELLANTS.

UNINCORPORATED ASSOCIATION — REMOVAL OF OFFICERS — RIGHTS OF SECEDING MEMBERS. — Where the laws governing a voluntary unincorporated association provide a remedy within the association for any offense committed by its officers, no opposition by the officers to the authority under which they act in the performance of their functions, nor irregularity in the performance thereof, will authorize a part of the members of the association to secede for the purpose of expelling its regularly elected officers, declaring their offices vacant, and constituting themselves successors.

CORPORATION — DEFECTIVE CERTIFICATE OF INCORPORATION — EVIDENCE. — A document purporting to be a certificate of incorporation, which is legally defective for want of conformity to the statutory requirements, is not proof of a corporation in esse.

ACTION — ATTEMPT TO COMPROMISE — EFFECT OF. — The rights of the parties to an action are not affected by an attempt and failure to compromise the litigation, irrespective of the cause which produced the failure.

APPEAL from an order of the Superior Court of the city and county of San Francisco refusing a new trial.

The action was brought to recover certain moneys deposited in the Hibernia Savings and Loan Society. The bank thereupon paid the money into court, and asked that certain other claimants be substituted as defendants. This was done. Judgment was rendered in favor of the plaintiffs. The substituted defendants subsequently moved for a new trial, which was refused. The further facts are stated in the opinion of the court.

*M. C. Hassett, J. D. Sullivan,* and *D. T. Sullivan,* for Appellants.

*D. L. Smoot,* for Respondents.

McKee, J.—This is an appeal from an order denying a motion for a new trial.

The order appealed from was made upon a statement of the case.

The case shows that plaintiffs and substituted defendants respectively claim to be the officers and directors of an association or society in the city and county of San Francisco known as the Ancient Order of Hibernians, Division No. 1, and entitled to a fund composed of moneys paid into court by the Hibernia Savings and Loan Society, which were deposited with it from time to time by said division No. 1.

Upon the trial of the issues raised by the pleadings between these rival claimants of the fund, the court found as facts:—

"1. That the $3,349.15 paid into court by the Hibernia Savings and Loan Society, and now in the treasury of the city and county of San Francisco, is the property of division No. 1 of the Ancient Order of Hibernians of the city and county of San Francisco.

"2. That the plaintiffs constitute and represent the said division, and the substituted defendants do not.

"3. That the said division is not a corporation, but a voluntary association of persons for benevolent purposes;

and that the substituted defendants, designated as the Ancient Order of Hibernians' General Benevolence Society of California, is not an existing corporation with title to said money.

"4. That the said division annually selects certain of its members to take charge of the division's property, and styles them trustees; that these trustees at present are John Collins, John Breslin, P. M. Cleary, Michael Sullivan, and Daniel O'Leary."

Upon these facts the court awarded possession and control of the fund to the plaintiffs in trust for the use and benefit of division No. 1.

The principal grounds assigned by defendants upon their motion for a new trial were, that the findings, conclusions of law, and judgment are wholly unsupported by the evidence, and that the findings are not responsive, to the issues made by the pleadings. It is upon these grounds that the case has been argued and submitted.

As to the first finding, both parties concede that the fund in controversy belonged to division No. 1 of the Ancient Order of Hibernians, of the city and county of San Francisco.

As to the second finding, the evidence contained in the record clearly shows that the "division" was organized by authority, in January, 1869, as a voluntary Catholic association or society for benevolent purposes; that it has since continued to exist, maintaining fraternal relations between all its members and with other divisions of the order until the year 1878; that in that year the division had on its roll-call the names of five hundred members, and on deposit in bank several thousands of dollars; that it held annual elections of officers in June of each year, and that, in June, 1878, the plaintiffs were regularly elected and qualified as its officers and directors.

The election of these officers was never contested, and for several months they exercised their functions without dissension or disorder. But in September, 1878, the

county judicature of the order in San Francisco discovered that the president and the other officers of the division in initiating new members into the order worked under a formula which it considered illegal, because it was not in conformity with the rules and regulations upon the subject promulgated by a national convention of the order held in Boston in May, 1878, and it directed the president to change the mode of initiation so as to conform to the law of the order as established by the Boston convention. In the same year, however, a national convention of the order which was held in New York denounced the Boston convention as an illegal body, wholly without authority to give law to the order in the United States; and division No. 1 in San Francisco, following New York, refused to obey the " county delegate," and continued to work under the formula of initiation which, it claimed, was prescribed by the " head of the order" in Ireland. This created dissension in the order, and upon a question as to the proper form of initiation, not only division No. 1, but the order itself, " split " in two.

Admittedly, however, certain of the defendants, in connection with such others of the members of division No. 1 as recognized the authority of the Boston convention, refused to attend the division meetings; and on the 8th of November, 1878, they held a special meeting outside the division-room, presided over by the county delegate of the order, at which a resolution was passed declaring that the offices of president and treasurer of the division were vacant, and two of the defendants were selected to fill the vacancies, and others of them were chosen to act as trustees. But such action was without color of authority. Neither opposition to the authority under which officers of an association act in the performance of their functions, nor irregularity in the performance of their functions, will authorize members of the association to secede for the purpose of expelling its

regularly elected officers, declaring their offices vacant, and constituting themselves as their successors in office. For any offense committed by a division officer, the laws of the order provided a remedy *within*, and not without, the division itself. An outside movement would be wholly ineffectual to disturb him in his office. So that when the plaintiffs commenced their action, in January, 1879, they were legally in possession of the organization as the legally elected officers and trustees of the division; and the finding of the court that they represented the division, and were entitled to the possession and control of its funds, is fully sustained by the evidence.

As to the third finding, there appears to have been no conflict in the evidence upon which it is founded. The only evidence upon the question is, that in July, 1869, when the division numbered fifty or sixty members, two of them, — Bernard Conlin and William Dolan,—on the 14th of July, 1869, prepared a certificate to the effect "that on the 12th of July, 1869, a meeting of the members of a society or association not yet incorporated, known as 'the Ancient Order of Hibernians' General Benevolent Society of California, . . . . was held for the purpose of incorporating themselves according to law; that at the meeting it was resolved that the said society should be incorporated and assume corporate powers under the laws of the state, and exercise such powers under the said corporate name, having its principal place of business in the city of San Francisco; and that there was then chosen by ballot seven persons to act as a board of directors of said corporation for one year.'" This certificate Conlan and Dolan signed, acknowledged, and caused a copy to be filed in the office of the secretary of state. But as articles of incorporation, the certificate was legally defective, for want of conformity to the statutory requirements under which it purported to have been made; and aside from the defects which rendered it inept, Conlan and Dolan and those acting with them in the movement did not attempt to exercise corporate func-

tions under it in connection with or as division No. 1 of the Ancient Order of Hibernians. Therefore the certificate was not proof of a corporation *in esse.* (Wood's Digest, p. 119, sec. 2; *Mokelumne Hill M. Co.* v. *Woodbury,* 14 Cal. 425; S. C., 73 Am. Dec. 658; *Harris* v. *McGregor,* 29 Cal. 127; *People* v. *Selfridge,* 52 Cal. 331.)

Besides, it was not claimed by the defendants that there existed at the commencement of the action a society or association by the name of the Ancient Order of Hibernians' General Benevolent Society of California as a chartered corporation, or that they were under that corporate name entitled to the funds of the division; and the finding that the division was not a corporation, and that the defendants were not a corporation with title to the division's funds, was fully sustained by the evidence.

But it is insisted that the order appealed from should be reversed because the court did not find upon an issue of compromise presented by certain supplemental pleadings in the case.

There was evidence given, without objection, which proved that a state convention of the order had met at San José after the commencement of the action, and proposed a compromise of the dissensions in the division, and that the plaintiffs and the defendants afterward held a meeting for the purpose of harmonizing and settling their disputes; but the meeting was discordant, and resulted in failure. Whether that was in consequence of the conduct of one or the other of the contesting parties is of no moment. The proposed compromise did not affect the title of the plaintiffs to their offices, and by the failure to compromise, from whatever cause, they did not waive any of their legal rights. So far as the question of their rights was concerned, the issue of a compromise was immaterial, and it was not necessary for the court to make any finding about it.

Order affirmed.

Ross, J., and McKinstry, J., concurred.