**NATIONAL CITY BANK OF NEW YORK v. UNION DE TRABAJADORES DE LA INDUSTRIA AZUCARERA DE TOA BAJA et al.**

**Civ. No. 5060.**

United States District Court
D. Puerto Rico, San Juan Division.

March 31, 1949.

236

H. S. McConnell, of San Juan, P. R., for plaintiff.

R. V. Perez Marchand, of Rio Piedras, P. R., and E. Cornier Martinez, of San Juan, P. R., for defendants.

CHAVEZ, District Judge.

This is an action in interpleader wherein The National City Bank of New York, plaintiff, seeks a judicial decision as to certain funds deposited in said bank by the Union de Trabajadores de la Industria Azucarera de Toa Baja (afiliada a la C.G.T.). Two union groups claim ownership of the funds, to wit: the above union, hereinafter referred to as the C.G.T. Union and the Union de la Industria Azucarera Independiente de Toa Baja, hereinafter referred to as the Independent Union. This cause was tried to the Court and a stipulation was filed as well as several exhibits.

The C.G.T. Union is a union of workers in and near Toa Baja and up to December 1947, was composed of the following colonias: (1) Ingenio; (2) Constancia; (3) Nevares Hermanos; (4) Santa Elena; (5) Manuel Joglar; (6) Union de Trabajadores de la Factoria.

On June 7, 1948 an election was held for the Toa Sugar Company, Central Constancia, which is the "Union de Trabajadores de la Factoria" upon the issue involved of authorizing the union and the employer to enter into an agreement which requires membership in such union as a condition of continued employment. The results of said election as shown in the certificate of conduct of election made by the National Labor Relations Board, Exhibit No. 15, shows that out of a total number of 393 eligible voters, 290 voted in favor of authorizing the C.G.T. Union and the employer to enter into an agreement which required membership in such union as a condition of continued employment.

The five original certificates in cases P-204, P-205, P-254, P-255 and P-262 marked Exhibits Nos. 10, 11, 12, 13 and 14 show the tabulation and results of elections of the colonias referred to in each certificate wherein the issue was as to whether the Independent Union or the C.G.T. would represent the workers in any collective bargaining negotiations. The results of said elections were as follows: (1) Ingenio—P.204—voted for the C.G.T.; (2) Constancia—P.205—voted for the Independent Union; (3) Nevares Enos.—P.-254—voted for the C.G.T.; (4) Santa Elena (Gerardo Fonalledas)—P.255—for C.G.T.; (5) Manuel Joglar—P.262—for the C.G.T.

On December 7, 1947, the C.G.T. Union held its assembly in accordance with Article (3) and (15) of the "Programa y Estatutos de la Union de Trabajadores Independientes de Azucareros del Toa (afiliada a la C.G.T.)" and elected the following officers: President—Miguel Rosado; Vice Pres.—Samuel Adames; Secy.—Hipolito Cancel; Treas.—P. L. Molina and a Marshal and six members of the Board of Directors.

At this meeting the assembly also elected a field inspector and a factory inspector. Then it adjourned.

The minute books of the Board of Directors of the C.G.T. Union show that the Board of Directors met on December 11 and 19, 1947, and transacted routine matters.

The pertinent provisions of the "Programa y Estatutos" of the C.G.T. Union

in effect on December 21, 1947, provide as follows:

"Article 2—Board of Directors: The administration and direction of the affairs of the Union shall be under the direction of a Board of Directors composed of a President, a Vice President, a secretary, a treasurer, a marshal and eight members.

"Article 3—Elections: The Board of Directors shall be elected by a majority vote and elections shall be held on the first Sunday of December."

"Article 12—Suspensions: Any member who fails to attend twice consecutively general meetings, special meetings or meetings of the Board of Directors or of any Committee to which he may belong, shall give a reasonable excuse, and if he fails to do so, he shall be temporarily suspended from all benefits provided for in these Rules; the same thing holds for any member who fails to pay his dues for two months, and it will be necessary for him to make new application for readmission to the Union accompanied by all his unpaid dues."

"Article 14—Rules for Debate: Every member in an Assembly has the right to propose what he thinks the Union should do. He should rise and address himself to the President: "Fellow President". He will not speak until the President gives him permission. Every motion should be seconded before it is argued or submitted to the consideration of the Assembly. Any resolution may be amended. The person who makes a motion has the right that he be allowed to explain in detail said motion but he will not be allowed any argument on its merits until the same is formally placed in debate. Only in obtaining the consent of the assembly can a motion which is being argued be withdrawn. The following motions are not debatable: to object to the consideration of a matter; to raise the previous question; to limit the debate and to establish methods of voting. The motion to lay on the table requires a majority of votes. The previous question ends the debate and requires the vote of two thirds parts for its approval. The motion that has been approved may be reconsidered at any time by a majority of votes of the Assembly.

"Article 15—Assemblies and meetings: An annual assembly of all the members shall be held at least once a year to elect the Board of Directors which shall take place the first Sunday in December; the extraordinary assembly shall be held when the Board of Directors believe it necessary to submit for the consideration of all the members a particular matter; the Board of Directors shall meet on Thursday of each week.

"Article 16—Amendments: These bylaws may be amended by a vote of two-thirds of an Assembly dully called."

On December 21, 1947, an extraordinary assembly of the C.G.T. Union was held and called to order. At that particular time the Independent Union did not exist. The following order of business was to be transacted at the meeting: 1.—Report of the President; 2.—Reading of minutes of preceding meeting; 3.—Reading of correspondence; 4.—Designation of Bargaining Committee; 5.—Designation of Grievance Committee; 6.—Designation of Scholarship Committee; 7.—General business; 8.—Adjournment of assembly.

This order of business was approved.

The assembly then acted upon a point of order raised as to whether a foreman was qualified to be a member of the Board of Directors. Agustin Cosme was elected Vice President in place of a member of the Board of Directors who was not qualified. A resolution was submitted to be acted upon later. The Grievance and Scholarship Committees were then elected.

The Secretary then read a resolution providing for the separation of the Union from the C.G.T. The President stated that he would submit the resolution to the assembly but first he would see how many of the fellow workers were entitled to vote. A protest was made and continued among the assembly and the assembly was unable to continue with its work. The President was unable to put an end to the protest. Then one Jose R. Melendez moved that the resolution be laid on the table for decision at another assembly. Motion carried by a majority. There being no further business the meeting was declared adjourned by the President.

The minute book kept by the Independent Union (Exhibit No. 6, p. 2) gives the following version of the December 21, 1947 meeting. The record as to what took place at this meeting is substantially the same as recorded in the minute book of the C.G.T. Union up to the time that the resolution was read by the Secretary providing for the separation of the Union from the C.G.T.

Juan Andino requested the President to read his resolution which he had handed over to the Board. The resolution was read by the Secretary. The reading of the resolution having terminated Pablo L. Molína stated that one of the signers of the same was not in good standing for failure to pay dues and was therefore not entitled to vote. The President stated that heretofore no one had been denied the right to vote because of failure to pay dues and that every one could vote. Argument on the question of the right to vote of members in default. The President states that he was not going to permit that the resolution for separation from the C.G.T. "Autentica" be approved at that assembly and adjourned the session with strong blows of the gavel. Strong protest arose from the members of the assembly on the question that the business of the meeting proceed. The President insisted on adjourning the meeting. After more than an hour without any definite resolution being approved, the factory workers announced that they were going to meet in a caucus at the office of the Union and would communicate their decisions to the assembly. The protest continued after they left, all present requesting the President to put the resolution to a vote. During the protest Herminio Cruz, a factory worker, came back and announced that the factory men had decided to withdraw from the Union and had elected a provisional Board of Directors. This announcement was greeted with applause. The assembly then insisted on voting the resolution. The President announced that two fellow workers of the C.G.T. were going to address some remarks to the assembly, to which the assembly objected tenaciously. One Roberto Rodriguez asked leave of the assembly to speak and managed to quiet the members. Juan Claudio then proposed a vote of no confidence with respect to the President and other members of the Board, and moved that the offices of the President and other officers of the C.G.T. Union be vacated. The motion was seconded and put to the vote, and carried without opposition. The assembly then elected the following new directors: President: Juan Claudio; Vice-President: Agustin Cosme; Secretary: Juan Ramon Santos; Treasurer: Felix Salas Cruz; Members of the Board: Modesto Rivera, Andres Carmona, Ramon Marrero, Valentin Alamo, Roman Galindez; Marshall: Cristino Ortiz; Inspector: Rafael Ortiz.

The new directors immediately took office, the motion to separate from the C.G.T. was put to the vote and approved without opposition. Motion for adjournment was made and seconded and carried unanimously.

In State ex rel Welch v. Passaic Hospital Ass'n, 59 N.J.L. 142, 36 A. 702, 703, a member of the board of Governors of the Passaic Hospital Association was expelled. No charges of neglect of duty had ever been filed against him, nor had any conduct of his ever been complained of. The constitution of the association required that there be an inquiry and determination of neglect before forfeiture could be declared. On these facts the Court held that this determination must be judicial in character, and upon notice to the relator, with an opportunity afforded him to be heard in his defense. Of course, in the case at bar, the by-laws have no provision with respect to removal of officers. But in the Welch case, the New Jersey court after stating the above principle, continues and lays down the following general principle, applicable to the case at bar: "But if the constitution and by-laws were silent upon this subject, and did not provide for an inquiry and determination, still these elements of judicial action would be absolutely necessary. He must have had notice, and must have been given an opportunity to be heard upon charges or complaint presented against him."

In Ostrom v. Greene, 161 N.Y. 353, 55 N.E. 919, the president of a Ladies Soldiers Monument Association, withdrew from a meeting together with the Secretary-Treas-

urer. They never returned to a meeting. A pro tem president and secretary were appointed, and some business was transacted. At a subsequent meeting, a president and secretary-treasurer were elected, and, at a third meeting, additional officers were elected. The Court upheld the new officers, but precisely on the grounds that the association had no rules, and that the officers had no tenure of office.

In J. J. McCallion et al. v. Hibernia Savings and Loan Society et al., 70 Cal. 163, 12 P. 114, a part of the members of a voluntary unincorporated association seceded after certain irregularities by the officers. The court held that where the laws of the association provide a remedy within the association for any irregularity, no opposition by the officers to the authority under which they act in the performance of their functions, nor irregularity in the performance thereof, will authorize a part of the members of the association to secede for the purpose of expelling its regularly elected officers, declaring their offices vacant, and constituting themselves successors.

The following pertinent facts established by the evidence must be kept in mind: (a) Certificates of election issued by both the National and the Insular Labor Relations Boards show that a majority of the workers voted that the C.G.T. Union should act as their bargaining agent. These elections were held subsequent to the stormy assembly of December 21, 1947; (b) the Independent Union has no formal constitution and by-laws; whereas the original or C.G.T. Union has and had at the time of the December 21, 1947 meeting a set of by-laws "Programa y Estatutos", (Exhibit 1); (c) the President of the December 21, 1947 meeting had been regularly elected on December 7, 1947, pursuant to the by-laws of the Union; (d) no charges were ever preferred against the President and Officers of the C.G.T. Union and no hearings were ever had for the purpose of ousting the old officials; (e) the President of the December 21, 1947 meeting, after ruling that the resolution separating the Union from the C.G.T. had been laid on the table for decision at another assembly, ruled that a motion to adjourn had carried and adjourned the meeting because of inability to control the proceedings before any action was taken to oust him and the C.G.T. Union Officers.

It must be remembered that the C.G.T. Union on December 21, 1947, had lawful rules and regulations "Programa y Estatutos" for the government of its members and these rules must be complied with until they are regularly changed. Article 14 of the "Programa y Estatutos", provides Rules for debate and among other things provides that "a motion to lay on the table requires a majority vote" and "a motion which has been approved may be reconsidered at any moment by a majority of the votes in the Assembly."

The motion to separate the Union from the C.G.T. was laid on the table by a majority vote. No motion for reconsideration was made. Then there being no further business, the meeting was declared adjourned by the President. Therefore, the meeting came to an end and any action taken by the group who lost the motion to table after the meeting was adjourned was null and void. The new group or Independent Union had no authority under the "Programa y Estatutos" to act and function in the manner that they did in vacating the offices of the President and other members of the C.G.T. Union and in proceeding to elect a new set of officers. No charges were ever preferred against the regular duly elected officers and no hearings were held.

The "Programa y Estatutos" appear to give all members a remedy for the ills that they were complaining about.

The Court will therefore hold that the Union de Trabajadores de la Industria Azucarera de Toa Baja (afiliada a la C.G.T.) is the rightful owner of the funds in question and which are now on deposit in the National City Bank of New York. Judgment will be prepared in conformity with this opinion.